1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11

VIRGIE AYALA, et al.,

12

Plaintiffs,

vs.

13

14

COUNTY OF IMPERIAL, et al.,

15

Defendants.

16

CASE NO. 15cv397-LAB (NLS)

**ORDER GRANTING IN PART MOTION TO DISMISS; AND**

**ORDER TO SHOW CAUSE RE: FAILURE TO SERVE DOE DEFENDANTS**

17       The claims in this case arise from the fatal shooting of Mark Anthony Ayala.  The

18  Court previously dismissed the complaint for failure to state a claim, and gave Plaintiffs an

19  explanation of its deficiencies.  They then amended the complaint, and Defendant County

20  of Imperial moved to dismiss.  The amended complaint ("FAC") brings survival claims under

21  both 42 U.S.C. § 1983 and California tort law for violation of Ayala's rights before his death.

22  It also brings Plaintiffs' own § 1983 claims for interference with family relationships and

23  California wrongful death claims.  Plaintiffs are the mother, domestic partner, and children,

24  respectively, of Ayala.

25  **I. Legal Standards**

26       A Rule12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v.*

27  *Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Fed. R. Civ. P. 8(a)(2), only "a short and

28  plain statement of the claim showing that the pleader is entitled to relief," is required, in order

1  to "give the defendant fair notice of what the . . . claim is and the grounds upon which it
2  rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). "Factual allegations
3  must be enough to raise a right to relief above the speculative level . . . ." *Id*. at 555. "[S]ome
4  threshold of plausibility must be crossed at the outset" before a case is permitted to proceed.
5  *Id*. at 558 (citation omitted). The well-pleaded facts must do more than permit the Court to
6  infer "the mere possibility of misconduct"; they must show that the pleader is entitled to relief.
7  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

8      When determining whether a complaint states a claim, the Court accepts all
9  allegations of material fact in the complaint as true and construes them in the light most
10 favorable to the non-moving party. *Cedars–Sinai Medical Center v. National League of*
11 *Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). The Court does
12 not weigh evidence or make credibility determinations. *Acosta v. City of Costa Mesa*, 718
13 F.3d 800, 828 (9th Cir. 2013). But the Court is "not required to accept as true conclusory
14 allegations which are contradicted by documents referred to in the complaint," and does "not
15 . . . necessarily assume the truth of legal conclusions merely because they are cast in the
16 form of factual allegations." *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1139 (9th
17 Cir. 2003) (citations and quotation marks omitted).   In addition to the pleaded facts, the
18 Court may consider facts of which it has taken judicial notice.  *Skilstaf, Inc. v. CVS Caremark*
19 *Corp*., 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).

20     The Court must raise and consider jurisdictional problems, *sua sponte* if necessary.
21 *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977).

22 **II. Judicial Notice**

23     Under Fed. R. Evid. 201(c)(2), the Court "must take judicial notice if a party requests
24 it and the court is supplied with the necessary information."

25     In support of its motion, the County has asked the Court to take notice of certain facts
26 concerning the Imperial County Narcotics Task Force, including the fact that it is part of the
27 U.S. Drug Enforcement Administration (DEA); that it is staffed both by DEA special agents
28 and by deputized state and local officers; and that it is DEA field division funded.  In support

of the request, Defendants attach printed pages on the DEA's website and include web addresses for the pages.  The printed pages are identical in all material respects to the web pages and do contain the information the County says they do.

Plaintiffs claim that the County failed to cite the documents source, which is incorrect; the brief provides the web address.  They also cite a somewhat older case, *Fenner v. Suthers*, 194 F. Supp. 2d 1146, 1148 (D. Colo. 2002) for the principle that a "website" is generally not admissible, because its accuracy cannot be readily determined.

*Fenner* does not stand for the principle that websites cannot generally be judicially noticed.  That case dealt with information that was found online in unidentified websites that "appear[ed] to have some connection to the National Institute of Health." *Id*.  Furthermore, the opinion merely expressed doubt that a website could provide accurate reference information about protocols for treating hepatitis C, where the information could be modified at will and there was no way to confirm it was not changing over time.

There is no such problem here, because the web pages are found on the website of a federal government agency, and it is clear they have not changed in any material respect. The site "dea.gov" is in fact the DEA's website, and other courts relied on information posted there.  *See, e.g., United States v. Hassan*, 578 F.3d 108, 114 (2d Cir. 2008) (citing DEA's fact sheet available at dea.gov website).   As long as other requirements are met, there is no prohibition on taking judicial notice of information on an official website.  *See Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1113 (9th Cir. 2012) (taking judicial notice of the Tennessee Titans' schedule available on the team page of the National Football League's company website). This is particularly true of government entities' official websites. *See Daniels–Hall v. National Education Association*, 629 F.3d 992, 999 (9th Cir. 2010) (taking judicial notice of information on the websites of two school districts, noting that it was made available by government entities and other requirements were met).

Although Plaintiffs call the information "hearsay" and object that the printed pages are not properly authenticated, they do not dispute that dea.gov is the DEA's website.  They do not argue that the printed information is inaccurate; but even if they did, their dispute would

1   be unreasonable, because the information can be confirmed on the DEA's website, and the

2   Court has done so.

3          The Court therefore takes judicial notice of this information, and will consider it along

4   with allegations in the FAC.  *See Skilstaf*, 669 F.3d at 1016 n.9.

5   **III. The Defendants**

6          This case began with Plaintiffs suing a host of Defendants.  Most of the original

7   Defendants have already been dismissed.  After the original complaint was dismissed,

8   Plaintiffs amended, omitting as Defendants the cities of El Centro, Brawley, and Imperial.

9   As a result, these cities were terminated as Defendants.  After Plaintiffs failed to serve the

10  City of Calexico, the DEA, the U.S. Border Patrol, and the U.S. Immigration and Customs

11  Enforcement, the Court issued an order to show cause why they should not be dismissed.

12  When Plaintiffs failed to respond, they were all dismissed without prejudice but without leave

13  to amend.  This left the County and unnamed county officers as the sole remaining

14  Defendants.

15         The FAC identifies the County as "County of Imperial, dba Imperial County Narcotics

16  Task Force, Imperial County District Attorney's Office, and Imperial County Sheriff's Office".

17  The Court construes this to mean the County itself is the  Defendant, and that the Task

18  Force, District Attorney's Office, and Sheriff's Office are alleged to be extensions of the

19  County itself.  This construction is borne out by the parties' behavior during the case.

20  **IV. Plaintiffs' Standing and Capacity to Sue**

21         The motion to dismiss raises several arguments that various Plaintiffs lack Article III

22  or prudential standing, or lack the capacity to sue.  Under Fed. R. Civ. P. 17(b)(1), capacity

23  to sue is determined by California state law.  The capacity of a minor to sue, with or without

24  a representative, is governed by Fed. R. Civ. P. 17(c).

25         Lack of Article III standing is a jurisdictional defect. *Renne v. Duncan*, 623 F.3d 787,

26  796 (9th Cir.2010). Federal jurisdiction is presumed to be lacking, unless it is affirmatively

27  shown. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).  And even if the

28  parties have failed to raise a jurisdictional issue, the Court must raise it *sua sponte*.  *Mt.*

1  *Healthy*, 429 U.S. at 278.  With regard to prudential standing, however, the Court may — but

2  is not required to — raise the issue *sua sponte*.  *City of Los Angeles v. County of Kern*, 581

3  F.3d 841, 846 (9th Cir. 2009).

4      At the outset, it is important to distinguish the two types of claims.  Claims that

5  belonged to Ayala before his death (such as claims for violation of his own Fourth and

6  Fourteenth Amendment rights) may be brought in a survival action, and they are derivative

7  of the decedent's rights.  *See Hayes v. County of San Diego*, 736 F.3d 1223, 1229 (9th Cir.

8  2013).  Claims based on injuries the survivors themselves suffered (such as loss of the

9  relationship or loss of support) may be brought in a wrongful death action.  *Id*.

10     Claims under § 1983 survive the decedent if the claim accrued before the decedent's

11 death, provided that state law authorizes a survival action.  *Tatum v. City & County of San*

12 *Francisco*, 441 F.3d 1090, 1094 n.2 (9th Cir. 2006). Under Cal. Code Civ. Proc. § 377.30,

13 only the decedent's personal representative or successor in interest can bring a survival

14 action.

15     Direct actions for wrongful death are a different class of cases.  The claims asserted

16 in such an action belong to the plaintiffs themselves, and are based on their own injuries

17 rather than the decedent's.  *Hayes*, 736 F.3d at 1229 (citing *Schwarder v. United States*, 974

18 F.2d 1118, 1123 n.3 (9th Cir. 1992)) (characterizing wrongful death actions as not deriving

19 from the decedent's own rights).  Under California law, the decedent's surviving spouse,

20 "domestic partner," or children[1] can assert claims arising from a wrongful death.  Cal. Code

21 Civ. Proc. § 377.60(a).  Not everyone who might be called a domestic partner qualifies,

22 though: For purposes of this statute, one must be a registered domestic partner under the

23 California Family Code § 297.  § 377.60(f)(1).  And under § 377.60(b), a parent can recover,

24 if she was dependent on the decedent. Plaintiffs bear the burden of showing that they meet

25 state requirements to bring a survival action.

26 / / /

27 / / /

28
_____

[1] The statute includes provisions for others, if the decedent has no surviving children.

1

**A. Plaintiff Sandra Barraza**

2      The motion argues that Barraza lacks standing to bring any claims because, although

3  she is alleged to have been Ayala's domestic partner, she was not his domestic partner

4  within the meaning of California law.  This argument is well-taken; she was not a registered

5  domestic partner and does not qualify under the statute.  The motion also points out that

6  Barraza has not alleged any facts to support a direct claim.  As a result, the motion argues,

7  she cannot pursue claims under either federal or state law.

8      Defendants concede Barraza lacks standing.  Her claims will therefore be dismissed

9  without leave to amend, and she will be dismissed as a party.

10      **B. Successors in Interest**

11      This issue was raised before, and the Court concluded that the best Plaintiffs had

12  managed to show was that "one or more of them are *probably* his successors-in-interest."

13  (Docket no. 16 at 5:5–6.)  But this is not good enough.  The Court also warned Plaintiffs they

14  were required to show affirmatively that they are the proper Plaintiffs and that they have

15  standing to sue.  (*See id.* at 5:1–10 (citing *Estate of Cornejo* ex rel. *Solis v. City of Los*

16  *Angeles,* 618 Fed. Appx. 917, 919 (9th Cir. 2015) and *DaimlerChrysler Corp. v. Cuno*, 547

17  U.S. 332, 342 (2006).)  The County now raises it, in its motion to dismiss.  Plaintiffs must

18  establish that they are successors in interest, or they lack standing to bring survival claims.

19  *See Hayes*, 736 F.3d at 1228–29.

20      Specifically, the County argued that Plaintiffs were required under Cal. Code Civ.

21  Proc. § 377.32 to file an affidavit or declaration showing that they are successors in interest

22  before commencing a survival action.  In response, Plaintiffs concede that they have not filed

23  the affidavits, but promise to do so "forthwith."  (Docket no. 22 at 2:19–20.)  Although a good

24  deal of time has passed, they have not filed the promised certifications.

25      Plaintiffs have pointed out that the FAC alleges that Ayala's estate was never

26  probated, that Ayala has no personal representative, and that they are Ayala's minor

27  children.  Therefore, they argue, they are Ayala's intestate heirs under Cal. Probate Code

28  / / /

1  § 6402. They also rely on Cal. Code Civ. Proc. § 377.60 and cite *Smith v. City of Fontana*,

2  818 F.2d 1411, 1419 (9th Cir. 1987).

3        Nevertheless, as the Court cautioned Plaintiffs earlier, each Plaintiff <u>must</u> make an

4  affirmative showing that he or she is a successor in interest in order to maintain a survival

5  action.  Under § 1983, only where state law authorizes a survival action may a plaintiff assert

6  a decedent's rights that accrued before the decedent's death.

7        In California, a survival action is only authorized if brought by a successor in interest.

8  Here, that means the suit can be maintained only by Ayala's personal representative, if his

9  estate was formally probated, or by the beneficiaries of his estate, *i.e.*, his heirs, if it was not.

10  *See Estate of Cornejo*, 618 Fed. Appx. at 919 (citing Cal. Code Civ. Proc. §§ 377.11 and

11  377.30). It also means the suit can only be commenced if the required affidavit or declaration

12  is filed.  This appears to be a substantive rather than merely procedural requirement. *See*

13  *Lopez v. County of Los Angeles*, 2015 WL 3913263 at *6 n.21 (C.D. Cal. June 25, 2015)

14  (citing *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1092–94 and n.2 (9th Cir.

15  2006)).  Courts in this Circuit do not always insist on the affidavit's being filed at the outset.

16  *See id.* at n.22 (accepting affidavit that plaintiffs attached to their opposition to the motion

17  to dismiss).  But they will dismiss claims if this requirement is not satisfied.  *See, e.g., Estate*

18  *of Duran v. Chavez*, 2015 WL 8011685 at *7 (E.D. Cal., Dec. 7, 2015) (distinguishing *George*

19  *v. Morris*, 736 F.3d 829 (9th Cir. 2013) ("[I]n order for Plaintiffs to have standing in the instant

20  case, they must comply with Cal. Code of Civ. Proc. §§ 377.32 . . . ."); *Ward v. Wells Fargo*

21  *Home Mortg., Inc.*, 2014 WL 6766032, at *4 (N.D. Cal. Nov. 29, 2014).

22        Plaintiffs cite *Parsons v. Tickner*, 31 Cal. App. 4th 1513, 1523–24 (Cal. App. 2 Dist.,

23  1995) for the proposition that the affidavit isn't required.  But *Parsons* simply stands for the

24  proposition that it isn't a condition precedent that must be pled.  It explains that failure to file

25  the affidavit could subject the action to a "plea in abatement" — that is, a plaintiff might be

26  required to withdraw the claim and refile it after complying.  *Id*. at 1524.

27  / / /

28  / / /

1      Including some of the required information in an unverified complaint does not amount

2 to compliance with § 377.32. The survival claims therefore must be dismissed for lack of

3 jurisdiction.

4      **C. Guardian ad litem**

5      The FAC identifies either Sandra Barraza or Virgie Ayala as the minor children's

6 guardian ad litem. The motion points out that neither one has been appointed as provided

7 under Fed. R. Civ. P. 17, and asks that their claims be dismissed for that reason. But under

8 Rule 17(c)(2), a minor who does not have a guardian or similar representative can litigate

9 through a "next friend". Virgie Ayala, their grandmother, can serve in this capacity. *See*

10 *Carter v. Davis*, 988 F. Supp. 2d 33, 36 (D.D.C. 2013) (discussing "next friend" doctrine).

11 Appointment of a guardian ad litem is only required if the minor is unrepresented.

12      **D. "Estate of Mark Anthony Ayala**"

13      Although the Estate is not named in the caption, a preface names the Estate itself as

14 a party. It then names the three minor Plaintiffs; Virgie Ayala individually and as Ayala's

15 successor in interest; and Sandra Barraza, individually, and as domestic partner and

16 successor in interest to Ayala. The Estate has never been identified as a party in the docket,

17 and Plaintiffs have never objected to this or asked that the Court treat the Estate as a

18 separate entity. Furthermore Ayala's estate was never probated and no representative was

19 ever appointed. The Court construes their briefing as treating the Estate as Ayala's interest

20 in this this action, to the extent it survived his death, to which Plaintiffs are claiming to

21 succeed. In other words, the Estate is not a separate party, but the individual Plaintiffs'

22 interests in a survival action.

23 **V. Merits**

24      This case concerns the fatal shooting of Ayala in El Centro, California on January 31,

25 2014. The FAC alleges that Ayala was a passenger in a taxi,[2] when officers of the Imperial

26 County Narcotics Task Force in unmarked vehicles pulled it over and attempted to serve a

27

28      [2] The taxi driver, Martin Lerma-Mayoral, is the plaintiff in a separate case which is now being litigated and is in the discovery phase.

misdemeanor warrant on him.  Although he was unarmed and made no threatening gestures, the officers shot Ayala 37 times, killing him. The FAC alleges other actions the officers took after Ayala's death, which the Court has already ruled do not give rise to a survival claim.

### A. *Monell* Claim

A municipality like the County cannot be sued on a vicarious liability or *respondeat superior* theory under § 1983 for injuries inflicted by its employees or officers.  Instead, the County can only be liable if it somehow participated in the wrongdoing, through its official rules, policy, custom, or practice.  *See Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 690–91 (1978).  To establish *Monell* liability, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted; alterations in original).

There are three ways to show the existence of a custom or policy: (1) by showing a longstanding practice or custom which constitutes the municipality's standard operating procedure; (2) by showing that an official with final policymaking authority made the decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.  *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008).  Mere negligence cannot serve as the basis of a *Monell* claim.  *Doughterty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

Even though the FAC's first and second § 1983 claims are brought nominally against all Defendants, they are really claims against the officers.  They concern only what the officers did or failed to do, and say nothing about the County's involvement. Only the seventh claim, based on the County's policies, attempts to bring a § 1983 *Monell* claim against the County.

1    Clarifying the application of *Twombly* and *Iqbal*, the Ninth Circuit held:

2    First, to be entitled to the presumption of truth, allegations in a complaint or
     counterclaim may not simply recite the elements of a cause of action, but
3    must contain sufficient allegations of underlying facts to give fair notice and
     to enable the opposing party to defend itself effectively. Second, the factual
4    allegations that are taken as true must plausibly suggest an entitlement to
     relief, such that it is not unfair to require the opposing party to be subjected
5    to the expense of discovery and continued litigation.

6    *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).   The Ninth Circuit has held that this

7    standard applies  to *Monell* claims.   *AE ex rel. Hernandez*, 666 F.3d at 673.

8         The motion to dismiss argues that the *Monell* allegations are the kind of formulaic

9    recitations that *Twombly* and *Iqbal* hold are insufficient to state a claim.  The FAC's *Monell*

10   claim is its seventh claim for relief.  Its allegations about policy (FAC¶¶ 96–100) are longer

11   than before, but they remain nothing more than naked assertions without any *factual*

12   enhancement.   *See Twombly*, 550 U.S. at 557.   Reciting theories of recovery, and

13   concluding that a defendant's conduct falls within them will not suffice.  *Iqbal*, 556 U.S. at

14   678 ("Threadbare recitals of the elements of a cause of action, supported by mere

15   conclusory statements, do not suffice.") This is true regardless of how vehement the recitals

16   are, and how many words are used. *See, e.g., Atayde v. Napa State Hosp.*, 2016 WL

17   4943959, slip op. at *11 (E.D. Cal., Sept. 16, 2016) (holding that a "litany" of allegedly

18   unconstitutional policies and omissions amounted only to threadbare recitals of the elements

19   of a *Monell* claim).  The Court cautioned Plaintiffs about this in its order dismissing the

20   original complaint.

21        For example, it is not enough to allege that: 1) the County had a policy of hiring

22   people with "dangerous propensities" for abuse; 2) it inadequately supervised and trained

23   its officers whom it knew had these "dangerous propensities"; 3) it maintained "grossly

24   inadequate procedures" for reporting and dealing with their misconduct; 4) it failed to

25   discipline its officers' misconduct, including unlawful detention and excessive force; 5) it

26   ratified officers' intentional misconduct; 6) it maintained an unconstitutional policy of

27   detaining people without probable cause and using excessive force; and 7) it failed to

28   properly investigate claims of unlawful detention and excessive force. Value-laden adjectives

- 10 -

like "dangerous," "inadequate," "excessive," "reasonable," "unlawful," and "unconstitutional" signal conclusions, not facts. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 n.5 (9th Cir. 2012) (concluding that allegations of "inadequate" policies that would likely result in death were mere "naked assertions"). *See also Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149–50 (E.D. Cal. 2009) (discussing pleading standard for *Monell* claim for inadequate hiring and training, after *Iqbal*). Similarly, verbs like "ratified" and "abusing" signal legal conclusions. *See Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (discussing facts a plaintiff must prove in order to bring a ratification claim). *See also Atayde*, 2016 WL 4943959, slip op. at *11(holding that allegations that policy-making officials had ratified the acts of subordinates were conclusory, and needed to be supported by facts).

Plaintiffs also argue that the circumstances of the shooting reasonably lead to an inference of failure to train, supervise, and discipline. This is too great a stretch. Officers can do wrong without their acts being attributable to their municipal employers. If that were not so, *Monell* would have no meaning, and municipalities would be routinely liable for their officers' use of excessive force. *See Christie*, 176 F.3d at 135–41 (rejecting, as tantamount to *respondeat superior* liability, various theories under which a municipality would be liable merely because its officers did something wrong).

A lesser flaw is the FAC's repeated use of a "knew or should have known" standard for *Monell* liability. Normally "should have known" indicates a negligence standard. But negligence is not enough to establish a claim under § 1983. *Dougherty*, 654 F.3d at 900.

In short, the FAC does not plead a *Monell* claim against the County. Plaintiffs have been cautioned about the pleading standard, and told what they must plead, but they have not done so.

**B. Status of Task Force**

Even more significantly, the County contests Plaintiffs' implicit characterization of the Task Force, whose officers shot Ayala, as an arm or division of the County. The County represents that the Task Force operates under the DEA, and the DEA funds it. County

/ / /

15cv397

1    agents are deputized and serve on the Task Force, as do other federal, state, and local

2    officers.  If this is true, the County's exposure is doubtful.

3           A serious flaw in the FAC's allegations is that it fails to allege a relationship between

4    the County and the Task Force that would make the County liable.  For example, it does not

5    allege the County supervised or had authority over officers while they were working for the

6    Task Force, or that it had a role in deciding what Task Force officers would do, or that it

7    dictated the Task Force's policies, or anything else that would tend to make the County

8    responsible for what the Task Force did.  A *Monell* claim requires that the municpality's

9    policy be the "moving force" behind the constitutional violation.  *Plumeau*, 130 F.3d at 438.

10   If some other agency's policy, or the Task Force's own policy were the driving force, and if

11   the County did not create that policy, the County would not be liable.  *See City of Canton*,

12   489 U.S. at 386 (requiring a "direct causal link between [the] municipal policy or custom and

13   the alleged constitutional deprivation").

14          Furthermore, the County points out that the unidentified officers who shot Ayala are

15   only alleged to be members of the Task Force — not County officers who were deputized.

16   If the Task Force is not under the County's control, its officers are not automatically County

17   officers.  The FAC alleges that the officers came from "various Imperial County and Federal

18   law enforcement agencies" and were assigned to the Task Force.  (FAC, ¶ 20.) Doe

19   Defendants 1–6, the officers who shot Ayala, could have been deputized officers of some

20   other municipality, or even federal officers. The County argues that the FAC fails to even

21   allege that one of its officers shot Ayala, and this argument is well-taken.  If none of the

22   County's officers shot Ayala, the County cannot be liable under a *Monell* theory, or any other

23   theory.

24          This is an instance where all that can be inferred is "the mere possibility of

25   misconduct," leaving open the obvious possibility that the Plaintiffs are not entitled to relief

26   from this Defendant.  *See Iqbal*, 556 U.S. at 679.

27   / / /

28   / / /

**C. State Law Claims**

The County argues that the FAC's claims for wrongful death, battery, and negligence must be dismissed because in California, public entities can only be liable in tort based on an enabling statute; there is no direct tort liability. *See Miklosy v. Regents of Univ. of Calif.*, 44 Cal.4th 876, 899 (2008) (noting that, to the extent permitted under the state and federal constitutions, the Government Claims Act abolished common law forms of liability for public entities).

Plaintiffs reject the County's assertion, and cite Cal. Govt. Code § 812.2(b). They say this provision provides that public entities are only immune when the employee who committed the tort is also immune. This badly misconstrues the statute. The statute actually grants immunity to public entities if their employees engage in tortious conduct but are found immune. The Court must, and does, follow the California Supreme Court's own interpretation of the Government Claims Act as set forth in *Miklosy*. Because Plaintiffs have not identified a statutory basis for liability, their state law tort claims must be dismissed.

The County argues that any liability under state law must depend upon a *respondeat superior* theory. But of course that could only succeed if the officers who shot Ayala are employed by the County, which has not been alleged.

The County also argues there can be no direct claim against a government entity for negligent hiring, supervision, training, or retention of its employees. *See de Villers v. County of San Diego*, 156 Cal. App. 4th 238, 255–56 (Cal. App. 4 Dist. 2007) ("We conclude that a direct claim against a governmental entity asserting negligent hiring and supervision, when not grounded in the breach of a statutorily imposed duty owed by the entity to the injured party, may not be maintained.") Here, Plaintiffs have not identified a statutory duty on which they base the negligent hiring, supervision, training, and retention claims.

**VI. Order On Motion to Dismiss**

For these reasons, the motion to dismiss is **GRANTED IN PART**. To the extent it brings claims against the County, the FAC is **DISMISSED WITHOUT PREJUDICE**. Sandra Barraza's claims are **DISMISSED WITHOUT LEAVE TO AMEND**. Claims against the Doe

Defendants have not been the subject of any motion, and those claims are not yet dismissed.  If Plaintiffs think they can successfully amend their claims against the County, they must seek leave to amend by filing an *ex parte* motion by **March 1, 2017** and attaching their proposed second amended complaint as an exhibit.  If they file such a motion, the County may file an opposition by **March 15, 2017**.  No reply is to be filed without leave.  The Court will set a hearing if appropriate, but otherwise the matter will be deemed submitted on the papers.

The proposed second amended complaint must remedy all the defects this order has identified, or leave to amend will be denied.  This means, among other things, that Plaintiffs must plead facts showing that the County's customs or policies were the moving force behind constitutional violations, what those customs or policies were, and that the County was responsible for conduct by the Task Force officers who violated Ayala's rights.  With respect to survival claims, it also means Plaintiffs must show they are successors in interest.

If Plaintiffs fail to seek leave to amend within the time permitted, claims against the County will be dismissed without leave to amend.

**VII. Failure to Serve Doe Defendants**

Under Fed. R. Civ. P. 4(m), a defendant must be served within 90 days after the complaint is filed.  If not, the action must be dismissed, unless the plaintiff can show good cause for the failure.  The Court also has authority to dismiss for failure to prosecute.  *See, e.g., Nat'l Account Mgt., Inc. v. Singhal*, 536 Fed. Appx. 687, 687 (9th Cir. 2013) (affirming dismissal of claims for failure to prosecute).  Here, Plaintiffs have apparently taken no steps to prosecute their claims against the Doe Defendants.

None of the Doe Defendants have appeared. If Plaintiffs have served any of them, they have not filed proof of service on them or moved for default.  The Court earlier noted that the Doe Defendants obviously could not be served until the Plaintiffs learned their identity.  (Docket no. 16 at 6:7–16.)  In spite of this nudge, and although this case has been pending since early 2015, Plaintiffs apparently have made no move to find out who the Doe Defendants are so that they can be served.  For example, they have not sought limited

discovery.  *See SBO Pictures, Inc. v. Does 1–3036*, 2011 WL 6002620 at *2 (N.D. Cal., Nov. 30, 2011) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 649 (9th Cir. 1980) and *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578–80 (N.D. Cal. 1999)).  And if they have attempted less formal investigation, they have not mentioned it, and have not requested an extension of time to serve the Does.

No later than **March 1, 2017**, Plaintiffs must show cause why their claims against the Doe Defendants should not be dismissed for failure to serve.  They may do so by filing a memorandum of points and authorities, not longer than five pages.  If they have previously served any of the Doe Defendants, they may file proofs of service.  But they must still show cause with regard to any unserved Doe Defendant.

If Plaintiffs fail to show cause within the time permitted, their claims against the Doe Defendants will be dismissed without prejudice but without leave to amend.  *See* Fed. R. Civ. P. 4(m).

**IT IS SO ORDERED**.

DATED:  February 3, 2017

**HONORABLE LARRY ALAN BURNS**
United States District Judge

15cv397