1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10
11

VIRGIE AYALA, et al.,

CASE NO. 15cv397-LAB (PCL)

12

Plaintiffs,

**ORDER VACATING ORDER OF DISMISSAL;**

13

vs.

14

**ORDER DENYING *EX PARTE* MOTION TO AMEND;**

15
16

COUNTY OF IMPERIAL,

**ORDER ENTERING PARTIAL FINAL JUDGMENT; AND**

17

Defendant.

**ADMONITION TO COUNSEL**

18
19

**Procedural Background and Vacatur of Dismissal**

20

     This case concerns the fatal shooting of Mark Ayala in El Centro, California on

21

January 31, 2014.  On February 3, 2017, the Court dismissed the first amended complaint

22

and directed Plaintiffs, if they thought they could amend, to file an *ex parte* motion for leave

23

to do so, attaching their proposed second amended complaint as an exhibit.  They were also

24

ordered to show cause why the Doe Defendants should not be dismissed for failure to serve.

25

Both were to have been done by March 1, 2017.

26

     On the deadline, Plaintiffs attempted to circumvent the Court's order by filing three

27

noncompliant documents, including a second amended complaint that was not attached to

28

a motion.  Because of Plaintiffs' decision to submit noncompliant paper copies instead of

obeying electronic filing rules, the documents did not immediately appear in the docket. The Court, believing Plaintiffs had abandoned their claims, therefore dismissed the case and entered judgment. When the documents were later forwarded to chambers, the Court issued an order correcting various problems and specifically ordering Plaintiffs' counsel to obey certain requirements. (*See* Order of March 7, 2017 (Docket no. 37).) The Court then struck two of the documents, and denied a motion for leave to take early discovery. It also ordered Plaintiffs' counsel to comply with local electronic filing requirements and cautioned them that any further violations of those requirements would result in both rejection of the submitted documents, and sanctions.

The Court then *ordered* Plaintiffs to file an *ex parte* motion for leave to amend by March 15, 2017. (Docket no. 37 at 2:15–16.) They were specifically cautioned that if they did not obey the Court's order, the action would be dismissed without leave to amend. (Docket no. 37 at 2:19–21) (emphasis in original).

When Plaintiffs again missed the deadline, the Court again dismissed the case. After that, Plaintiffs filed another late and noncompliant document. This time it is a motion for leave to file a second amended complaint. Besides missing the deadline, it violates several local rules that Plaintiff have specifically been told they must obey.

Plaintiffs' counsel have again violated Civil Local Rule 5.1, regarding legibility of documents, in spite of being reminded about it *twice*. In particular, their violation of Rule 5.1(a) regarding font size makes their briefing unduly hard to read.[1] They also violated Civil Local Rule 15.1(b), concerning requirements for motions for leave to amend. Together, these two violations mean the Court has been handed the task of visually comparing two lengthy complaints in small type. In future, Plaintiff's counsel will be required to comply with these and all other applicable rules.

---

[1] One of Plaintiffs' counsel's many violations was that since the start of the case, neither one had registered for electronic case filing, which is mandatory in this District for all attorneys. This was a continuing violation they had been warned about four times. One of the two has now registered, but does not appear to have the required software and hardware. (*See* Users Manual for Electronic Case Filing at 6.) Plaintiffs' documents appear to have been typed on an 8-point typewriter, then scanned, and an image of the pages uploaded to the docket. The resulting image is not text searchable.

1    Although Plaintiffs' counsel have persistently violated rules, ignored deadlines, and

2    disregarded the Court's orders, the Court is mindful of the policy of adjudicating cases on

3    the merits where reasonably possible.  *See Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir.

4    1986).  Because it appears Plaintiffs are still making some effort to litigate this case and an

5    adjudication on the merits is still a possibility, and in view of the serious nature of Plaintiffs'

6    claims, the Court **VACATES** its order of dismissal entered March 16.

7    **Denial of Motion for Leave to Amend**

8    The repeated violations partially outlined above would, by themselves, merit summary

9    denial of the motion for leave to amend.  But the motion also fails on the merits.  The motion

10   attaches a proposed second amended complaint ("SAC").

11   Except for the County of Imperial, all Defendants, have been dismissed without leave

12   to amend.  This includes the City of El Centro, the City of Brawley, the City of Imperial, the

13   City of Calexico, the U.S. Drug Enforcement Agency, the U.S. Border Patrol, U.S. Customs

14   and Immigration Enforcement and, most recently all Doe Defendants.[2]  The SAC's caption,

15   however, includes all the original Defendants.

16   The SAC tries to resurrect claims against the Doe Defendants that were dismissed

17   without leave to amend.  It does so by identifying them as parties, by making lengthy and

18   detailed allegations against them, and by raising six claims against them. Plaintiffs did not

19   seek reconsideration of the Court's order dismissing the Doe Defendants. Attempting to

20   circumvent the Court's orders in this way is improper and will not be allowed.

21   The SAC also fails to name the County in the "Parties" section, and fails to make any

22   allegations against it that would result in its liability until claim seven, on page 14 of the SAC,

23   for municipal liability under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658

24   (1978).  And even then, the claims are woefully inadequate.  The SAC alleges that the

25   County has the power to adopt policies.  (SAC, ¶ 95.)  Then in an attempt to identify what

26   those policies were that gave rise to the claims here, they allege, *in toto*:

27

28       [2] *See* Docket no. 38 (Order denying leave to conduct early discovery, and dismissing all claims against Doe Defendants without leave to serve).

96. [The County and certain Doe Defendants), through their employees, officers, and deputy sheriffs knowingly and intentionally promulgated, maintained, applied, enforced, and suffered the continuation of policies, customs, practices, and usages in violation of AYALA's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

97. The [Imperial County Narcotics Task Force], through its managers, supervisors, and policymakers, fostered a custom of extreme lawlessness, which inevitably and foreseeably led to AYALA being shot in excess of 37 times and killed.

(SAC, ¶¶ 96–97.)  As the Court has explained more than once before (*see, e.g.,* Docket no. 27, 9:5–11:23),  this clearly falls short of the pleading standard the Supreme Court set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  *See also AE ex rel Hernandez*, 666 F.3d 631, 637 and n.5 (9th Cir. 2012) (holding that the *Twombly/Iqbal* standard applies to *Monell* claims).  Even worse, other elements of a *Monell* claim, which the Court pointed out in earlier rulings, are also missing. *See Plumeau v. Sch. Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

In addition, the SAC again fails to allege facts showing that the Imperial County Narcotics Task Force is an arm or division of the County of Imperial, as opposed to a federal entity, an arm of the state of California, or an entity in its own right.  As made clear in earlier pleadings, the Task Force is staffed with both federal and county officers, so it is hardly clear that the County's policies are the moving force behind the Task Force's constitutional violations, as is required for a *Monell* claim.  (*See* Docket no. 27 at 12:3–13.)  The Court has already taken judicial notice of government documents showing the Task Force is part of the U.S. Drug Enforcement Agency[3] (*see* Docket no. 27 at 2:22–4:4), which has already been dismissed as a Defendant. In addition, the Task Force was originally named as a Defendant in its own right, but has since been dismissed.  To the extent Plaintiffs were bringing tort claims against any federal Defendants, they failed to comply with Federal Tort Claims Act requirements.

---

[3] Although the Court did not rely on caselaw, it is worth noting that in the past, joint task forces of this type have been controlled by the U.S. Drug Enforcement Agency.  *See Liston v. County of Riverside*, 120 F.3d 965, 988 (9th Cir. 1997) ("[O]fficers from several law enforcement agencies, under the control of the  Federal Drug Enforcement Agency, formed a joint narcotics task force . . . .")

- 4 -

15cv397

1    The proposed SAC attempts to overcome the facts of which the Court has taken
2    notice, by citing the results of a Google search and the fact that the Imperial County District
3    Attorney is chair of the Task Force. (SAC, ¶¶ 99–100.)  The fact that Google's algorithms
4    associate the Task Force with the Imperial County Sheriff's office is of no help here.  And
5    the fact that the District Attorney is the Task Force's chair does not show that the Task Force
6    itself is run by the County or that the County formulates its policies.  *See, e.g., Sharer v.*
7    *Oregon*, 581 F.3d 1176, 1179–80 (9th Cir. 2009) (considering various factors to determine
8    whether two state entities, both headed by the same official, were independent of each
9    other).  Finally, the allegation that the Task force is either the County's alter ego or else a
10   "joint venturer with the County" is wholly conclusory and unsupported by factual allegations.

11   The motion to which the SAC is attached cites the "any set of facts" pleading
12   standard, arguing that a complaint meets the pleading standard only if no set of facts can
13   be proved under the amendment that would constitute a valid claim.  (Docket no. 40 at
14   3:2–4.)  The Supreme Court has specifically disapproved this standard, Plaintiffs should not
15   rely on it again.[4]

16   In short, the proposed SAC violates several rules and Court orders, improperly
17   attempts to resurrect claims dismissed without leave to amend, and in its present form easily
18   fails to satisfy the pleading standard. Even if it were filed, it would be subject to immediate
19   dismissal.  Granting leave to file to SAC in its present condition would therefore be futile, and
20   the motion is **DENIED**.

21   If Plaintiffs' counsel believe there is any chance they can successfully amend, they
22   must first review *all* the Court's rulings in this case as well as the Civil Local Rules
23   (particularly Rules 5.1 and 15.1.)  No later than **Tuesday, April 25, 2017**, they may file a
24   renewed motion for leave to amend that complies with *all* of the Court's orders and

25

26   [4] If Plaintiffs' counsel had Shepardized this case, they would have seen that it had
     been impliedly overruled on this point by *Twombly* and *Iqbal*. *See, e.g., Twombly*, 550 U.S.
27   at 560–63.  To be sure, an amended complaint that fails even this lenient test would be
     subject to dismissal and such an amendment would be futile, and cases continue to cite it
28   for that purpose. But an amendment that passes the "any set of facts" test does not
     necessarily meet the higher standard set forth in *Twombly* and *Iqbal*, and that is the purpose
     for which the standard is cited here.

15cv397

1 directions, as well as all applicable rules. They must not attempt to add any new

2 Defendants, to bring claims against any Defendants who have dismissed, or to raise any

3 claims other than a *Monell* claim against the County. And they must not seek reconsideration

4 of any of the Court's orders unless they comply with ¶ 4(j) of the Court's standing order.

5       The Court has deliberately set an unusually generous deadline for Plaintiffs to comply

6 with this order, so that they will have plenty of time to comply if they possibly can, and also

7 so that if they do file a motion, it will be the result of diligent, careful work. **Failure to file a**

8 **motion within the time permitted that complies with *all* these requirements will result**

9 **in dismissal of this entire action without leave to amend, and no additional**

10 **opportunities to amend will be given. No more extensions will be granted.**

11 **Entry of Judgment Under Fed. R. Civ. P. 54(b)**

12       Under Fed. R. Civ. P. 54(b), the Court may order the entry of final judgment as to

13 some but not all claims in appropriate circumstances. On March 24, 2016, all claims were

14 dismissed without leave to amend as to the City of Calexico, the U.S. Drug Enforcement

15 Agency, the U.S. Border Patrol, and the U.S. Immigration and Customs Enforcement. On

16 March 7, 2017, all Doe Defendants were also dismissed. None of these Defendants were

17 ever served with process, nor did Plaintiffs even make an effort during the two years this

18 case has been pending. In all likelihood, the Doe Defendants do not even know they were

19 ever Defendants in this suit. This meant that the Court never had personal jurisdiction over

20 them. *See S.E.C. v. Ross*, 504 F.3d 1130, 1140 (citing precedent for the principle that only

21 substantial compliance with Fed. R. Civ. P. 4 gives federal courts jurisdiction over

22 defendants). Furthermore, the two-year statute of limitations on claims against them has

23 now run, so the claims are permanently barred. *See Butler v. Nat'l Community Renaissance*

24 *of Calif.*, 766 F.3d 1191, 1198 (9th Cir. 2014). These Defendants therefore were entitled to

25 expect that they would no longer have to defend against the claim, and requiring them to do

26 so now would unfairly surprise and prejudice them. *See Anderson v. Air West, Inc.*, 542

27 F.2d 522, 525 (9th Cir. 1976) (holding that dismissal was the appropriate sanction, where

28 plaintiff had failed to serve defendants until after the limitations period had expired).

1  Although another case now pending in this Court brings claims based on the same incident,

2  none of these Defendants were ever Defendants in that case.

3      In view of Plaintiffs' repeated efforts to drag the federal Defendants and Doe

4  Defendants back into the case, the Court determines that there is no just reason to delay

5  entry of judgment as to claims against them. *See* 10 Wright, Miller & Kane, *Federal Practice*

6  *and Procedure*: Civil 3d § 2656 at n.20 (3d ed.) ("Once the statute has run, a potential

7  defendant who has not been served is entitled to expect that he will no longer have to defend

8  against the claim.").

9      Claims by Plaintiff Sandra Barraza were also dismissed on the merits without leave

10  to amend, for lack of standing. (*See* Docket no. 27 at 6:1–9, 13:27–28.)  *See* 10 Wright,

11  Miller & Kane, *Federal Practice and Procedure*: Civil 3d § 2656 at n.19 (3d ed.) (dismissal

12  for lack of subject matter jurisdiction that disposes of a claim completely is within the scope

13  of Rule 54(b)).

14      As to claims by Sandra Barraza, and all claims against the City of Calexico, the U.S.

15  Drug Enforcement Agency, the U.S. Border Patrol, the U.S. Immigration and Customs

16  Enforcement, and all Doe Defendants, the Court determines that there is no just reason to

17  delay entry of a final judgment.  As to these claims, the Court directs that judgment be

18  entered in favor of Defendants.

19  **Admonition to Plaintiffs' Counsel**

20      Plaintiffs' counsel's repeated violations of the Court's orders and applicable rules have

21  gone well beyond excusable neglect.  Their latest infraction is extraordinary. In the Court's

22  memory, it has never vacated a dismissal *twice* in the same case because of a party's

23  tardiness — particularly when counsel offered no explanation for missing the deadline.

24      Most recently, Plaintiffs were strictly ordered to file their motion no later than March

25  15.  If they did so, Defendants were given until March 29 to file a response in opposition.

26  When the March 15 deadline passed, the Court dismissed the case, just as it said it would.

27  Then Plaintiffs' counsel without explanation or comment filed their tardy motion.  Violations

28  like this unfairly prejudice Defendants and prevent the Court from controlling its docket.

15cv397

Defense counsel had every reason to think the Court's scheduling order meant what it said. When March 15 came and went and the Court dismissed the case on March 16, they had every reason to think the case actually was dismissed. They were free to turn their attention to other tasks and to adjust their schedules accordingly. When Plaintiffs' counsel filed their late motion, Defense counsel could not have known for certain what to do. Would the Court accept the late filing? And in case the Court did accept it, should they begin preparing their opposition? And if a filing was due, Plaintiffs' tardiness had eaten up some of their response time; was the deadline still March 29, or would their deadline be extended? With this late and unexplained filing, Plaintiffs' counsel unfairly surprised their opponents and imposed undue burdens on them. Whether this was the result of gamesmanship or merely inexcusable negligence, the result was the same. Plaintiffs' counsel gained an unfair advantage at Defendants' expense.

The late filing also wasted judicial resources and prevented the Court from controlling its own docket. In this case, the Court issued a scheduling order with its own schedule in mind. If the Court's order had been followed, the Court either would have been able to dismiss the case on March 16 with a brief order, or wait for Defendants' briefing on March 29. Either way, the Court would have been free to turn its attention to matters on calendar. On March 15 and 16, the Court was in the middle of a civil trial, and a motion for a temporary restraining order had just come in. Both are urgent matters that the Court must attend to promptly. The rogue filing derailed the schedule the Court had set, forcing the Court to deal with the artificial emergency Plaintiffs' counsel's violation had needlessly created. As a result, it was not until Monday, March 20, that the Court was able to issue an order relieving Defense counsel of filing a response to the late filing.

While the Court has done its best to uphold the policy of deciding cases on their merits whenever reasonably possible, the time has come when it is no longer reasonably possible to do so justly. Plaintiffs' counsel are not entitled to special indulgences and favors at Defendants' expense. And the Court is not prepared to abandon its role as a neutral and impartial arbitrator to ride to Plaintiffs' rescue when their own counsel cannot or will not.

1   While adjudication on the merits is an important policy, considerations of fairness, expense,

2   and finality are important as well.   *See* Fed. R. Civ. P. 1; *see also Anderson*, 542 F.2d at

3   526 (holding that dismissal of claims avoided the evil of allowing the plaintiff to benefit from

4   her attorney's abuses, and was not an unduly harsh sanction).

5       Plaintiffs' counsel will not be permitted to usurp control of the docket or to impose

6   unfair burdens on their opponents, who are relying on the Court's orders. Plaintiffs' counsel

7   must read and comply with *all* of the Court's orders, the Court's own standing order, the Civil

8   Local rules, and the Federal Rules of Civil Procedure. At this point, sanctions less than

9   dismissal do not appear to be an option. *See Anderson*, 542 F.2d at 525.  Plaintiffs' counsel

10   should expect that any further violations will result in dismissal. If this case is dismissed,

11   there will be no third vacatur.

12

13       **IT IS SO ORDERED**.

14   DATED:  March 21, 2017

15

16   **HONORABLE LARRY ALAN BURNS**
     United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

15cv397